IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>2014 Black Acura MDX, Seized on October 25, 2022,<br><br>Defendant. | ) | Civil No. 4:23-cv-00119<br><br>AMENDED<br>VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America hereby files and serves this Amended VERIFIED COMPLAINT IN REM and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") due to its involvement in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2. The United States believes the Defendant property is a vehicle used, or intended to be used, to facilitate one or more sales of a controlled substance in violation of federal law, and is therefore forfeitable under 21 U.S.C. § 881(a)(6).

## II. DEFENDANT *IN REM*

3. The Defendant property is generally described as:

> A 2014 Black Acura MDX, Vehicle Identification Number 5FRYD3H43EB001893, seized on or about October 25, 2022, from 627 North Independence Avenue, in Rockford, Illinois.

(hereinafter "Defendant Black Acura").

4. The Defendant Black Acura was seized in connection with a conspiracy that was conducted in the Northern District of Illinois, the Southern District of Iowa, and elsewhere, and remains in the custody of law enforcement.

## III. JURISDICTION, VENUE, AND PROCEDURAL AUTHORITY

5. This Court has jurisdiction over an action commenced by the United States as Plaintiff, pursuant to 28 U.S.C. § 1345.

6. This Court has original jurisdiction over this action for the recovery or enforcement of a fine, penalty, or forfeiture incurred under an Act of Congress, pursuant to 28 U.S.C. § 1355(a).

7. This Court also has jurisdiction over this action because acts or omissions giving rise to this civil forfeiture occurred in the Southern District of Iowa, therefore, this action may be brought in this District, pursuant to 28 U.S.C. § 1355(b)(1)(A).

8. Venue is proper in this District because this is a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture, and is being prosecuted in the District where the action, as authorized by 28 U.S.C. § 1395(a).

9. Venue is also generally proper in this District under 28 U.S.C. § 1391(b)(2) because it is where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."

10. The general rules for civil forfeiture proceedings are set forth in 18 U.S.C. § 983.

## IV. FACTS

11. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

12. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

13. Schedule II substances have a high potential for abuse, and the drugs or substances have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions. Abuse of a Schedule II controlled substance may lead to severe psychological or physical dependence 21 U.S.C. § 812(b)(2)(A) – (C).

14. Schedule II substances include methamphetamine, cocaine, and fentanyl. 21 U.S.C. § 812(b), Schedule II.

15. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

16. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

17. It is believed that, or will be after a reasonable opportunity for further investigation and discovery, evidence will show the Defendant Black Acura is a

vehicle used, or intended to be used, to facilitate one or more sales of controlled substances in violation of federal law.

18. This civil forfeiture relates to the criminal case of *United States v. Roberto Esquivias-Sandoval, also known as Luis Manuel Zamora Briseno, also known as Pedro Esquivias*, 3:22-cr-00114 (S.D. Iowa). Defendant Esquivias-Sandoval / Zamora Briseno ("Zamora") is charged in the criminal case with conspiracy to distribute methamphetamine, cocaine, and fentanyl in the Southern District of Iowa and elsewhere between at least approximately August 2021 and approximately October 25, 2022, as well as with making several illegal distributions of controlled substances, and with illegal reentry into the United States after previously having been arrested and removed to his native country of Mexico.

19. Specifically, Zamora used the Defendant Black Acura to conduct numerous drug transactions in the Southern District of Iowa and elsewhere, as discussed below.

20. In approximately August 2021, state and federal law enforcement in the Quad Cities area of Illinois and Iowa known as the Quad Cities Metropolitan Enforcement Group (QCMEG) began an investigation into the distribution of methamphetamine, cocaine, and fentanyl by Zamora and others.

21. Over the course of the investigation, a person working with the QCMEG ("cooperating witness") made numerous purchases of methamphetamine, cocaine, and fentanyl from Zamora and his associates. These transactions were recorded via various means.

22. Zamora and his associates were not legally authorized to sell or distribute controlled substances, and thus all of their acts and attempts to do so were criminal violations of the Controlled Substances Act.

23. The conspiracy involved numerous transactions in Illinois and Iowa, only some of which are discussed herein.

24. On multiple occasions, Zamora drove both the Defendant Black Acura and a white Acura to illegal drug deals that were part of the conspiracy discussed herein, thus demonstrating his dominion and control over both vehicles.

25. Elizabeth Trujillo, Zamora's niece, is the owner of both the white Acura and the Defendant Black Acura.

26. In December 2021, the cooperating witness met Zamora at a predetermined location near the 300 block of West Kimberly Road, Davenport, Iowa for the purpose of conducting an illegal drug transaction.

27. Shortly after the cooperating witness arrived at the location, Zamora joined him, driving up in the Defendant Black Acura.

28. The cooperating witness got into the Defendant Black Acura, and Zamora handed him a bag containing four ounces of methamphetamine, in exchange for $2,000 in U.S. Currency.

29. Thereafter, while still in the Defendant Black Acura, Zamora gave the cooperating witness a sample of another controlled substances he was illegally selling, namely 14.9 grams of cocaine.

30. Thereafter, while still in the Defendant Black Acura, Zamora explained

he could sell the cooperating witness pills containing fentanyl.

31. Approximately an hour or so later, Zamora and a co-conspirator met with the cooperating witness at a Hooters restaurant in Davenport, Iowa to discuss future illegal controlled substance transactions between them.

32. Zamora advised the cooperating witness of the prices for the methamphetamine, cocaine, and fentanyl he could provide, and said he had an unlimited supply of these drugs.

33. They also discussed code words they would use to discuss methamphetamine, cocaine, and fentanyl.

34. After the meeting, Zamora returned to the vehicle he used to travel to the negotiating session, namely the Defendant Black Acura.

35. Zamora retrieved an ounce of cocaine he had stashed in the Defendant Black Acura, and gave it to the cooperating witness.

36. In mid-January 2022, the cooperating witness and Zamora met for another drug deal, in Rockford, Illinois, where Zamora resided.

37. The two established a meeting place near the 3600 block of Auburn Street in Rockford.

38. Zamora drove the Defendant Black Acura to the meeting.

39. Zamora then had the cooperating witness follow him to a garage nearby, where Zamora took four ounces of methamphetamine from the Defendant Black Acura and stashed it in a concealed spot in the vehicle of the cooperating witness.

40. Near the end of January 2022, Zamora contacted the cooperating

witness to see if he was ready to buy more methamphetamine.

41. The cooperating witness agreed to buy more methamphetamine from Zamora, and they arranged another meeting at the Hooters restaurant in Davenport, Iowa.

42. Approximately two hours later, Zamora arrived at the rendezvous place, driving the Defendant Black Acura.

43. Zamora instructed the cooperating witness to get into the Defendant Black Acura, and they conducted the drug deal there.

44. The cooperating witness paid Zamora's associate, and Zamora retrieved the methamphetamine from under the hood of the Defendant Black Acura.

45. In February 2022, the cooperating witness met Zamora at his residence in Rockford, Illinois, and saw both vehicles Zamora had used to conduct illegal drug deals, a white Acura and the Defendant Black Acura, parked inside the garage.

46. In April 2022, the cooperating witness made another purchase of methamphetamine from Zamora at the Hooters restaurant in Davenport, Iowa, and Zamora travelled to the meeting in the white Acura.

47. In early October 2022, the cooperating witness used Snapchat to arrange another drug deal with Zamora.

48. Zamora advised he did not have any methamphetamine, but could sell cocaine.

49. Zamora set the meeting up in Rockford, Illinois, where he resided.

50. The day after their communication, the two met in Rockford, Illinois at

predetermined location.

51. Zamora drove the Defendant Black Acura.

52. Zamora instructed the cooperating witness to follow him to his residence in Rockford, where Zamora broke two ounces off of a brick of cocaine and sold it to the cooperating witness for $2,000.

53. Later in October 2022, the QCMEG arrested Zamora in Davenport, Iowa. He was driving the white Acura.

54. During an inventory search of the white Acura, officers discovered 583.7 grams of powder cocaine, and a key chain with the key to the Defendant Black Acura and to a safe that was later located in Zamora's residence in Rockford, Illinois.

55. That same day, a search warrant was executed at Zamora's residence in Rockford, Illinois.

56. During the search of the residence, officers discovered 13.7 grams of cocaine, $24,488 in U.S. Currency believed to be proceeds from the sale of controlled substances, and items used by drug dealers to package-controlled substances, such as two scales, packaging materials, a money counter, and a vacuum sealer.

57. The Defendant Black Acura used to conduct illegal drug deals in the Southern District of Iowa was also located there.

58. A properly trained drug-detection dog alerted to the presence of one or more controlled substance on the seized money, and also alerted to the back door of the Defendant Black Acura.

59. A search of the Defendant Black Acura disclosed wrapping material for

controlled substances and items belonging to Defendant Zamora.

60. Zamora was arrested in Wisconsin in 1998 with possession with the intent to deliver marijuana.

61. Zamora was arrested in Rockford, Illinois in 2003 for possession of cocaine/analog.

62. Zamora was arrested on May 3, 2003, for obstruction of justice and possession of cannabis.

63. Zamora was arrested on November 13, 2003, for manufacturing / delivering cocaine.

64. Zamora was deported from the United States on June 22, 2010, to his home country of Mexico.

65. The Federal Bureau of Investigation (FBI) attempted an administrative forfeiture of the Defendant Black Acura after it was seized.

66. Zamora's niece, Elizabeth Trujillo, contested the attempted administrative forfeiture, claiming she was the innocent owner of the Defendant Black Acura. She provided a title to the vehicle with her name on it.

67. Ms. Trujillo claimed she did not know of Zamora's illegal activities.

68. During the course of the investigation, law enforcement questioned Ms. Trujillo about her knowledge of Zamora's drug dealing, and she denied it then, too.

69. After Ms. Trujillo denied knowing about any drug dealing, she was confronted by law enforcement with information that they knew she had wire transferred drug money on Zamora's behalf to Mexico.

70. When confronted with this evidence of her apparent complicity in the drug-dealing conspiracy discussed herein, Ms. Trujillo's demeaner changed, as if she knew she had been caught being deceptive.

71. It is a violation of the federal money laundering statute to knowingly conduct a financial transaction, such as a wire transfer, of the proceeds of a specified unlawful activity, which includes violations of the Controlled Substances Act, with the intent to carry on the specified unlawful activity or to conceal the ownership or control of the proceeds.

## V. COUNT ONE
## (FORFEITURE UNDER 21 U.S.C. § 881(a)(4))

72. Plaintiff repeats and realleges each and every allegation set forth above.

73. The government believes that evidence to be obtained and the facts pled above will prove and prove, by a preponderance of the evidence, that the Defendant Black Acura is a vehicle used, or intended to be used, to facilitate sales of controlled substances in violation of federal law.

74. As a result of the foregoing, the Defendant Black Acura is liable to condemnation and to forfeiture to the United States for its use, in accordance with 21 U.S.C. § 881(a)(4).

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems proper and just.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By: */s/ Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

**VERIFICATION**

I, David Brown, hereby verify and declare under penalty of perjury that I am a Special Agent with Federal Bureau of Investigation, and that I have read the foregoing Verified Complaint and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and other law enforcement agencies working in this matter, including information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Federal Bureau of Investigation.

Dated: April 10th, 2023.

SA [signature]
David Brown, Special Agent
Federal Bureau of Investigation